The next case, number 22-1833, Kwasi Ablordepey v. Bennett Walsh et al. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning. My name is Leonard Keston and I'm counsel for Kwasi Ablordepey, who is a longtime employee of the Soldier's Home in Holyoke. This Soldier's Home is a facility which houses our nation's veterans. I just want to, did you mean to take time for rebuttal or not? No. Okay. That's fine. Thank you. This Soldier's Home is a facility which allows our nation's veterans to live out their last months or years in dignity. And what the defendants did in response to the COVID epidemic resulted in the 76 deaths, 160 illnesses, and untold trauma to all the veterans, their families, and the employees. But he's the plaintiff, so where is the substantive due process harmed to him? Because it's... Was the harm to him? The emotional distress? Yeah, because he's not claiming any harm for the families or he doesn't have standing for the families of the people who died. Correct. You want to talk about... Okay. We'll talk about him and his fellows. You know, as you may know, I filed this as a class act. We filed this as a class action. Of course, it's not there yet. This is on behalf of him and his fellow employees. What they endured in watching these people care. This is not just a job for them. This is a mission for Mr. Ablordepey and his fellow employees. And what they saw happening to these people and the callous disregard of the defendants in what happened, especially... This would be helpful to us. Yes, sir. It's a legal claim. Yes, sir. The legal claim is substantive due process? Yes. So if it's emotional distress, it's not bodily integrity, correct? Correct. Okay, so you have to overcome qualified immunity? Correct. So what makes it clearly established that there is a substantive due process right to be free from the emotional harm? Or is that the wrong way to ask the question? I wouldn't say it's the wrong way to ask the question since you asked it. No, I understand qualified immunity. But I suggest in a situation where you have shocks to conscience actions, actions that shock the conscience, there should not be qualified immunity. You know, this is a shocks to conscience case. And we all understand, those of us that practice most of the time below as I do, that once the court sets that standard, it's very hard to meet it. And on qualified immunity, it's really hard to show that it's clearly established that it's been met. And we say... So what supports the idea that it's clearly established that it's been met in a case where there's no physical harm to the employee? I don't think the physical harm is the important question. The type of harm is the important question. The question is whether we understand that this case is relatively unusual. It's hard to find another case like it. I get that. But what we have here is when you make decisions, deliberate decisions to... The most egregious one here is the merging of the two wards, where the employees are completely devastated by the thought that they've taken all of these veterans, put them into one unit, and said they're going to die anyway. So that it was like a concentration camp where their beds are next to each other. And they're left to die. And the employees have to deal with this. Mr. Aberdessey had to deal with this. And witnessed this. And witnessed these people dying and have to deal with their families. For a while, they couldn't even say what was going on there. Maybe it would help me if you took a case, like an actual decided case, and then showed me how, given that that's an established case that was in place at the time this occurred, this is so similar to it or similar enough to it that it would have been obvious to any reasonable person that it was the same. There isn't any. Okay. And that's good for you or bad for you? Unclearly established. Oh, of course we'd prefer that there was. Okay. So how can... The other way to ask it is, if there is no case, we've got a lot of instruction from the Supreme Court not to just rely on the high general shock to conscience test and say that's enough. So we need something a little more concrete than that. And I guess I'm asking you, giving you an opportunity to describe for us what that is in precedent that's going to enable you to win. I can't describe a precedent. I'm suggesting this should be the precedent. This is how... Okay. But if this is the precedent, then there's nothing clearly established. That's the issue. It's clearly established, I suggest, that you cannot do what they did. And that's what I'm asking you. What would you point to, to help us come to the conclusion that you're right? I'd point to the shocks to conscience then. But I guess what... We've got case law suggesting that that's too high a level of generality for us to conclude. Usually we need something... Always we need something more than that. So there's various features of this case that are unusual. It's an employee. There's no physical harm to the employee. Employee could quit. All those types of things. Yet you say it's absolutely clear that this is a substantive due process violation, notwithstanding those factors. Are there some cases that help you make that argument? Or are there no cases that help you make that argument? There's no cases identified so far. And what about... Just as an analogy, I assume what the situation you said was happening here at the time, the first few months of COVID, it was probably happening in other places. You're not aware of any other cases from any other district or any other circuit? There's the Sausalito case where they moved the encampment. They moved the encampment. They have a homeless encampment which enhanced their ability to get COVID. And there the court found that that shocked the conscience. And the plaintiffs there were the persons who got the COVID? Yes. Yeah. So that wouldn't make it necessarily clear that the same analysis applies to an employee who didn't get it. Okay. And let me ask you, your client was also a volunteer. Am I correct? He was not an employee? Oh, no, he was not. Is it? Okay. No, he was an employee. He's actually also a union rep. No, he's an employee. And as I say, when you do something like this and it rises, their conduct may even be criminal. There is a prosecution going on right now of a couple of the defendants. It's so outrageous and so shocking that anyone will be on notice that they are violating the Constitution. The constitutional right of the employee? Yeah. Okay. You see, the distinction in the case that's cited, I know they talk about that the employees free to leave. That case, first of all, that case did not go into the state-created danger document. They didn't argue that in that case. We're arguing that, that this is a state-created danger. This is in the other case, they're talking about people not doing things, not training, not doing things. Here, there's active decisions being made, employees being told, Mr. Aberdessey was told that he was disrupting the place because he was wearing a mask to protect himself from COVID. He got reprimanded. Don't alarm anybody. Don't do it. These employees, he was actively being told not to protect himself. He was told with others to transfer these people, that they're going to be dead anyway. So, I suggest to you that that's enough, at least to get the question to the jury, at least get us to a discovery, which is all we ask, is we want the case. We ask that the case goes on so we can prove all these things. We have been relying on the report done by the state, which was cited and appended to our complaint about what happened here. And the, it was a house of horrors, and all of the employees were exposed to this. And the notion, as I read in these cases, well, it's just a job. You can walk away from it. I completely disagree with that, and so should this court, that that should be the test for these kind of things. It is very hard to meet the shocks to consciousness, but if any case can meet it, it's this one. And, any other questions? No. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the appellees could introduce herself on the record to begin. Good morning. My name is Diana Day Foskett. I represent Bennett Walsh, and I'm speaking today on behalf of all of the defendant appellees. First of all, the court correctly noted that qualified immunity should apply in this case because there is no clearly established precedent. Plaintiff, in his brief, cites two cases in which a court found that in the absence of precedent, conduct could be shocking to the conscience, such that you did not need to have a court decision of some kind placed in the official on notice. Those two cases are Taylor, in which a prisoner was left to sleep naked in feces for six days, and Motorwell, in which case a prisoner was found hanging but still alive in his cell, and they left him hanging, left the room, and then he subsequently passed away. In those cases, the court found that you don't need a case that tells you what to do. Those are the only cases to my research that were cited by any of the plaintiffs in the brief that that you don't need precedent in order to overcome qualified immunity. However, in those cases, it was the target of the conduct who was making that case. To analogize Taylor and Motorwell to this case, the court would have to find that one of the other prison guards who watched this horror unfolding was the victim in that case, and that based on this shocking behavior or shocking situation. I guess the force of the claim is something like, unless you're taking the position that it can't be clearly established as to any employee claim, then the question just becomes, is this such an egregious case? It's like a Taylor case vis-a-vis an employee. So what are you saying on that regard? In that regard, I would say that we have to back up and we have to look at what plaintiff has claimed and what state-created danger covers and what it doesn't cover. We know from Collins versus Harker Heights that this is a substantive limitation on where we apply the state-created danger test. In Collins, the Supreme Court said that there is no liberty interest in voluntary employment. And when we look at the state-created danger test in Irish versus Fowler, the case says that we are adopting the state-created danger doctrine based on all of our previous cases where it's something caused by a third-party instrumentality, where the state is putting someone in danger from some kind of third party. Those are the cases. So within the state-created danger test and how we apply that, we see that workplace risks that are inherent to the workplace are not covered by state-created danger, that Collins is a limit within which we look at state-created danger. The cases that courts have, the decisions that courts have made relying on state-created danger in the post-Collins world do agree with that contention where they say that inherent workplace risks are the dividing line between what is Collins, what is traditionally tort and should be handled by the tort system versus what should we look at under the lens of state-created danger. And those cases are a state of Carrington, which is District of Colorado. Coucher, which is the Third Circuit case with the prison guard who caught MRSA, that says those are the risks of the guard's job. The state of Phillips, D.C. Circuit. Walker versus Roe, Seventh Circuit. In all of those cases, there's a discussion that says workplace risks that are inherent to the job. But I guess to the extent that that argument goes to the question of the risk of getting COVID, that would seem potentially to relate to it. Correct. But maybe I misunderstood the claim. I thought the claim was emotional distress arising not just from the risk of getting COVID, but from having to deal with the situation that was created, that was leading to the large number of deaths. Correct. And putting the employee in the position of having to be tending to such a horrific situation. So if we parcel out the claims the plaintiff is making, we leave out the COVID piece. Cases in which people have recovered, actually recovered for a psychological or emotional only injury, we don't have any cases where that has been held the law in the First Circuit. The most this court has done has said that we are leaving the question pointedly open of whether somebody could be compensated for a psychological only injury. And in those cases, the discussion is that this level is essentially on the amount of torture, psychological torture of someone. So in order to establish intentional psychological torture with no countervailing government interest to the facts in this case would represent a great expansion, which is not clearly established at this time. And I do want to point out that there are some cases in the plaintiff's brief that note that emotional distress damages only sometimes have been awarded in 1983 cases. Those cases are procedural due process standards for which a different standard applies. Let me ask you, the fact that the appellant did not get COVID, does that factor in any way? It factors in this particular case as one more reason why the district court acted properly. We don't need to reach the further question, but in this case, because this is inherent to the workplace risk, because there are no cases that say that there's liability for an emotional distress only case. Because how would you recover? State created danger talks about dangers, realized dangers. And the only realized potential danger to plaintiff that he states is he was reprimanded and he continued to show up at a risky workplace. This is a situation that is certain to repeat over and over in a government context where a worker is forced to go in as a first responder in a dangerous situation, where someone who is on the front lines of firefighting or building collapses, you are sending someone into a dangerous situation. But the difference, if there is a difference, is that in those cases, it wasn't arson that created the fire, the government created. So the question here is whether it was a state created danger that they were being asked to take care of because of the calluses with which the patients were treated and putting them together, the efforts that were made to prevent people from using PPE and the like. And the question is, is all of that enough to rise to, even if there could be such a claim, the kind of intentional infliction of emotional distress of a worker that might meet the Sock the Constance test, when the state itself has created the danger that they then ask the employee to deal with? It does not, and certainly not on these facts. It wouldn't necessarily be arson. A controlled burn is the thing that we sometimes encounter in the case law. In this case, the factors haven't been met as far as what were the affirmative acts that were directed toward plaintiff, and then how attenuated is the harm from those acts to the plaintiff. So when we look at the very scant allegations of an affirmative act done by a particular defendant, and whether that act is deliberately indifferent to a right, not whether they were indifferent to the situation as a whole. Then we compare that to what was actually done to plaintiff, because that's the second part of our test in Irish versus Fowler. And the complaint does not say that any of these actions, for the vast majority of them, were directed toward plaintiff with the exception of the oral and written reprimand. And when we look at what is considered to be constitutionally shocking, constitutionally infringing some kind of 14th Amendment right, that doesn't exist on these facts where this is a voluntary situation, where plaintiff makes the choice every day to keep going to work. He knows what the situation is, he keeps going. And shocking the conscience, when we look at the case law, the kind of conduct that shocks the conscience is sadistic. It is deliberately ignoring rights, where we've got, in this case, countervailing government interests, which in all the cases discussing this, that is a factor. Because whatever you do in this emergency situation with this pandemic, the interests of the patients are to have the staff there, but the interests of the staff are to not have to go to work. And so where you have administrators trying to balance these rights between them, this is not the situation that shocks the conscience from a constitutional sense, because the government officials do not have clear signposts within the constitution of how they are to act. Would, in your view, a plaintiff perhaps, maybe under Massachusetts state law, have some employment, labor claim, or some other state constitutional claim, not federal? That that should be his... Absolutely. That is his remedy, his exclusive remedy, and... And you're not saying he doesn't have a state, at least, he can allege state claims, correct? Correct. And there's probably plenty of them. Correct. Well, I shouldn't say that, I'm not sure of the status, but... There may be some, theoretically. There may be some. So with that, I see my time is up. I'll just close and say that this is not a case that anybody wants to be here for. This was undeniably a tragedy, but unfortunately, these officials did not have sufficient guidance in the constitution that would subject them to liability in this case. Thank you. That concludes argument in this case. Counsel is excused.